UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME FINANCIAL SERVICES, LLC,

                Plaintiff,                             Case No. 1:04-CV-414

v                                                  Hon. Gordon J. Quist

JPMORGAN CHASE BANK, NA,

                Defendant.
_____/

**MEMORANDUM ORDER**

Pending before the court is plaintiff's motion to compel discovery.  For reasons more fully discussed on the record at the hearing held July 21, 2005, the immediate question before the court is whether certain defense documents pertaining to two bank transactions that occurred on October 18, 2002 and November 1, 2002 are protected by the attorney-client privilege and/or the work product rule.  If the attorney-client privilege protects the documents, it will be unnecessary for the court to consider the work product rule.  Accordingly, the court will begin by considering the attorney-client privilege.

Since this is a diversity case, Michigan's attorney-client privilege controls.  This rule is set forth in *Hubka v Pennfield Township,* 197 Mich.App. 117, 121-22, *rev'd in part on other grounds,* 443 Mich. 864 (1993).  That case states in pertinent part:

> [W]here the attorney's client is an organization, the privilege extends to those communications between attorneys and *all agents or employees* of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication."  That is, facts confidentially disclosed to an attorney

1

*by employees of the client* are covered by the attorney-client privilege.   (Citations omitted) [italics in original]

The rule was further explained by this court in an earlier case, *Wrench, LLC v Taco Bell Corporation,* 212 F.R.D. 514, 516 (WD. Mich. 2002)(Quist J.):

> Because this is a diversity case governed by Michigan law, the Court must apply Michigan law in determining whether the privilege applies. Fed.R.Evid. 501.  *See also Jewell v. Holzer Hosp. Found., Inc.,* 899 F.2d 1507, 1513 (6th Cir. 1990).  The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).  Under Michigan law, the attorney-client privilege attaches to confidential communications made by the client to his attorney for the purpose of obtaining legal advice.  *McCartney v. Attorney Gen.,* 231, Mich.App. 722, 731, 587 N.W.2d 824, 828 (1998)(per curiam).  The privilege also generally protects communications from an attorney to a client, including the attorney's opinions, conclusions, and recommendations based upon the facts furnished by the client.  *Hubka v. Pennfield Township,* 197 Mich.App. 117, 121-22, 494 N.W.2d 800, 802 (1992)(per curiam).  In addition, "where the attorney's client is an organization, the privilege extends to those communications between attorneys and *all agents or employees* of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication.' " *Id.* at 121, 494 N.W.2d at 802 (quoting *Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 253 n. 24 (D.C.Cir. 1977)).  *Cf. Upjohn Co.*, 449 U.S. at 394-97, 101 S.Ct. at 685-86 (rejecting the "control group" test for determining the extent of the privilege for corporate clients and holding instead that the privilege extends to communications by lower-level employees regarding matters within the scope of their corporate duties made at the direction of their superiors and with knowledge that the information was being sought in order to secure legal advice).[Italics in original.]

The present action arises in connection with a Ponzi scheme run by Pupler Distributors (Pupler), a customer of the defendant bank.  The scheme came to light when Pupler's checking account at the bank was seized by the FBI in mid-November 2002, on the order of this court.  Prior to that, however, two transactions occurred on October 18, 2002 and November 1, 2002, allegedly involving Pupler and the checking account of the plaintiff, Prime Financial Services, LLC

(Prime), a limited liability company run by Arthur Bott.  It is Mr. Bott's assertion that the transactions on those two days were unauthorized that gives rise to the present lawsuit.

After the Ponzi scheme was exposed, the bank conducted an internal investigation for the purpose of allowing its legal department to advise the bank.  Among the documents generated by the investigation were several touching on the transactions of which Mr. Bott complains, and it is those documents which are at issue here.  There are four documents, hereafter referred to as Document Nos. 2, 9, 10 and 11.[1]  Defendant has refused to produce these documents in response to plaintiff's Request to Produce Documents no. 8, on the basis that they are protected by the attorney-client privilege.  Plaintiff moves to compel.

## Document No. 10

Document No. 10 is a memorandum from Michelle Shangraw, an employee of the bank, to Richard Rogoff, an in-house attorney for the bank.  It provides an explanation to counsel about the contested transactions to enable counsel to give legal advice to the bank about plaintiff's account .[2]

In an affidavit dated June 7, 2005, Rogoff states he is a licensed, practicing attorney employed by the defendant.  Rogoff Affidavit at ¶'s 2 and 3.  During the relevant period he was employed by the bank's Law, Compliance and Government Relations Department and was familiar

---

[1]The documents are listed among others on the Consolidated Privilege Log (defense Exhibit A).  If all the items had been sequentially numbered, the documents in question would be numbers 2, 9, 10 and 11.  The court has reviewed these documents *in camera*.

[2]Various documents are attached to the memo.  All but one are bank documents (checks, deposit slips, etc.), which have been furnished to plaintiff already and are not at issue.  One attachment, however, is a letter written by Teddi McEachern dated October 30, 2002, which is document no. 2 on the Consolidated Privilege Log.  This document has not been furnished to plaintiff and will be discussed separately below.

with the bank's investigation of its customer, Pupler.  Rogoff states the purpose of the investigation was for him and other bank counsel to be able to furnish legal advice to the bank regarding Pupler and those connected to Pupler in anticipation of litigation.  Rogoff Affidavit, ¶ 4.  The investigation was conducted by the bank's Corporate Security Department at the direction of bank counsel. Rogoff Affidavit, ¶ 5.  The investigation was conducted on a confidential basis.  *Id.*  The bank employees were made aware that the investigation was being done on a confidential basis and the Corporate Security Department sent the materials generated by the investigation to Attorney Rogoff in confidence, with transmittals indicating their privileged and confidential nature. *Id.*; see also, Affidavit of Andrew Sekula, an employee of the bank's Corporate Security Department, dated June 29, 2005 at ¶ 4.

        Attorney Rogoff kept the investigation files in confidence, sharing them only with management and counsel for the bank, and then only on a "need to know" basis in connection with legal matters involving the bank.  Rogoff Affidavit, ¶ 5.  Rogoff specifically points out in his affidavit that the Shangraw memo was a confidential communication from a bank employee prepared at his direction as part of the investigation to provide him with information about the October 18, 2002 transaction, so that he could render legal advice to the bank.  Rogoff Affidavit, ¶ 6.  This document falls squarely within the protections of the attorney-client privilege.

**Document Nos. 9 and 11**

        Documents Nos. 9 and 11 are also protected by the attorney-client privilege, being requests by counsel seeking information in regard to the claims raised by Mr. Bott.  Document No. 9 is marked "PRIVILEGED AND CONFIDENTIAL ATTORNEY COMMUNICATION."  It is a request by bank attorney Andrea Beggs, prepared the same day as the Shangraw memo, to Ed Cook

in Corporate Security, listing information still needed about the transactions related to Pupler and plaintiff's account.  Document No. 11 is an email from Mary Binder, First Vice President/Senior Counsel for the bank, to Attorney Rogoff and to Ed Cook in Corporate Security, dated December 4, 2002, requesting information about the October 18, 2002 transaction.  Requests between counsel and authorized agents or employees of an organization, for the purpose of obtaining information to permit counsel to legally advise the organization, are protected by the attorney-client privilege.  *See, Hubka, supra,* at 121-22.  If the attorney-client privilege is indeed "to encourage full and frank communication between attorneys and their clients," *Wrench, supra,* at 516, quoting *Upjohn Company v United States,* 449 U.S. 383, 389 (1981), then it can only work if the attorney can ask, in confidence, questions of the client which will supply the attorney with the facts necessary for the attorney to formulate and give sound legal advice as to that particular case.  "The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant . . . it is only natural that [middle-level and lower-level] employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to actual potential difficulties." *Upjohn, supra,* at 390-91.  Thus, these communications from counsel to client are protected.

## Document No. 2

The final document, No. 2, is a statement by Teddi McEachern, a bank employee, concerning transactions she performed during the course of her duties relating to Pupler, given to two corporate security employees of the bank, Giorgio Bertucci and Ed Cook, as part of the investigation. Rogoff Affidavit, ¶ 6.  Again, Attorney Rogoff specifically states in his uncontroverted affidavit that this document was a confidential communication from a bank employee to counsel, prepared at the

direction of counsel, for the purpose of rendering legal advice to the bank.  Rogoff Affidavit, ¶'s 6 and 7.

While it appears this document satisfies the other requisites of the attorney-client privilege, *see* Affidavits of Attorney Rogoff and Andrew Sekula, *supra*, plaintiff's counsel points out that it differs from the others in that it was neither directly from or to an attorney for the bank, but rather was given to an agent of the attorney (Corporate Security), which supplied it to counsel. In *Hubka,* by contrast, the attorney communication was with the agent of the client.  Thus, plaintiff maintains, this communication is not protected by the attorney-client privilege.

I find this to be a distinction worth raising, but not one sustainable in this instance. Certainly this was a statement given by one bank employee to two other bank employees who were working at the explicit direction of the attorney.  Thus, the Corporate Security people conducting the investigation were also acting as agents of the attorney, who is also an agent for the employer (it should be remembered that in this case, all four people, the attorney included, were employed directly by the bank).   But, as noted above, *Hubka* utilizes the "subject matter" approach in Michigan in determining which communications are protected by the attorney-client privilege where a corporation is concerned.   The subject matter test is generally considered to contain three components:  (1) the person making the communication to the attorney must have been employed by the corporation; (2) the communication was made at the direction of a corporate superior; and (3) the subject matter of the communication must have been within the scope of the employee's duties. *See,* Edna Epstein, <u>The Atttorney-Client Privilege and the Work-Product Doctrine</u> at 102 (American Bar Association Section on Litigation, 4th Ed. 2001).   All three prongs were satisfied here as evidenced by the record.  The fact that the communication in this instance was a document being

transferred to the attorney through a subordinate, *whose delegated function was to gather such communications and transmit them in confidence to the attorney,* only reflects the nature of a modern day corporate party.  *See, Santrade, Ltd. v General Electric Co.,* 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("in instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys"); *Cuno, Inc. v Pall Corp.,* 121 F.R.D. 198 (E.D.N.Y. 1988) (documents held privileged where it was apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice). *See, also, Sharmda B. v Herrick,* 1998 U.S. Dist. LEXIS 9433 (N.D.Ill. 1998) (interview notes taken by non-attorney employee of public guardian attorney protected to same extent as if done by attorney); 8 Wigmore, Evidence § 2301 ("the privilege must include all persons who act as the attorney's agents").  It is of no practical significance whether the Corporate Security employee is viewed as the attorney's agent, or as an agent of the corporation working at the direction of the attorney, or both, since the affidavits of record satisfy the court that everyone concerned was an employee of the same corporation, that the information being gathered was being gathered in confidence at the direction of corporate superiors for the purpose of permitting one department of the defendant (the legal department) to render sound legal advice to another part of the same entity (the management).   This is a narrow application of the rule within the corporate setting.   Indeed, Attorney Rogoff's affidavit establishes that the Pupler investigation files were not only maintained in confidence but shared only with management and counsel for the bank on a "need to know" basis. Rogoff Affidavit, ¶ 5.  It appears in this instance that this was both the expectation and the reality.  Accordingly, I find that Document No. 2 is also subject to the attorney-client privilege.

The motion to compel discovery (docket no. 45) is DENIED.

IT IS SO ORDERED.

Dated:  August 12, 2005                    /s/ Hugh W. Brenneman, Jr.
                                           Hugh W. Brenneman, Jr.
                                           United States Magistrate Judge